IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION

| | |
|---|---|
| FLEXIWORLD TECHNOLOGIES, INC., <br><br> Plaintiff, <br><br> v. <br><br> LEXMARK INTERNATIONAL, INC., <br><br> Defendant. | CASE NO. <br><br> PATENT CASE <br><br> JURY TRIAL DEMANDED |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Flexiworld Technologies, Inc., files this Complaint for patent infringement against Lexmark International, Inc. alleging as follows:

**NATURE OF THE SUIT**

1. This is a claim for patent infringement arising under the patent laws of the United States, Title 35 of the United States Code. This case asserts infringement of United States Patent Nos. 9,965,233 ("the '233 Patent"), 10,642,576 ("the '576 Patent"), 10,846,031 ("the '031 Patent"), and RE42,725 ("the '725 Patent") (collectively, the "Patents-in-Suit").

**THE PARTIES**

2. Plaintiff **Flexiworld Technologies, Inc. ("Plaintiff" or "Flexiworld")** is a Washington corporation with its principal place of business at 3439 NE Sandy Blvd., #267, Portland, Oregon 97232.

3. Defendant **Lexmark International, Inc. ("Lexmark")** is a Delaware corporation with a regular and established place of business located at 740 W. New Circle Road, Lexington, Kentucky 40550. Lexmark can be served through its registered agent at The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.

## JURISDICTION AND VENUE

4. This action arises under the patent laws of the United States, 35 U.S.C. § 101, et seq. This Court's jurisdiction over this action is proper under the above statutes, including 35 U.S.C. § 271, et seq., 28 U.S.C. § 1331 (federal question jurisdiction) and § 1338 (jurisdiction over patent actions).

5. Lexmark is subject to personal jurisdiction in this Court. In particular, this Court has personal jurisdiction over Lexmark because Lexmark, directly and through its subsidiaries, divisions, groups, or distributors, has sufficient minimum contacts with this forum as a result of business conducted within the Commonwealth of Kentucky and/or pursuant to Fed. R. Civ. P. 4(k)(2). Furthermore, Lexmark is headquartered in this District. Furthermore, on information and belief, Lexmark has engaged in continuous, systematic, and substantial activities within this State, including substantial marketing and sales of products within this Commonwealth and this District. Furthermore, on information and belief, this Court has personal jurisdiction over Lexmark because Lexmark has committed acts giving rise to Flexiworld's claims for patent infringement within and directed to this District.

6. Furthermore, on information and belief, Lexmark has purposefully and voluntarily placed one or more infringing products into the stream of commerce with the expectation that they will be purchased and/or used by residents of this judicial District, including by directly and indirectly working with distributors, and other entities located in the Commonwealth of Kentucky, to ensure the accused products reach the Commonwealth of Kentucky and this judicial District.

7. Lexmark also maintains commercial websites accessible to residents of the Commonwealth of Kentucky and this judicial District, through which Lexmark promotes and facilitates sales of the accused products. For example, Lexmark's website https://lexmark.com is accessible to consumers in the United States, including those in the Commonwealth of Kentucky

and this judicial District, where Lexmark supplies information about products that can be purchased and/or used in this judicial District, including the accused products identified herein.

8. This Court has general jurisdiction over Lexmark due to Lexmark's continuous and systematic contacts with the Commonwealth of Kentucky and this jurisdiction. Further, Lexmark is subject to this Court's jurisdiction because it has committed patent infringement in the Commonwealth of Kentucky and this jurisdiction. Thus, Lexmark has established minimum contacts with the Commonwealth of Kentucky and the exercise of jurisdiction would not offend traditional notions of fair play and substantial justice.

9. On information and belief, Lexmark has committed acts of infringement in this District and has one or more regular and established places of business within this District under the language of 28 U.S.C. § 1400(b). Lexmark maintains a permanent physical presence within the Eastern District of Kentucky, conducting business from at least its location at 740 W. New Circle Road, Lexington, Kentucky 40550. Thus, venue is proper in this District with respect to Lexmark under 28 U.S.C. § 1400(b).

10. In addition, on information and belief, venue is proper in this judicial district under 28 U.S.C. § 1391(b), (c) and 1400(b) because Lexmark has conducted and does conduct substantial business in this forum, directly and/or through subsidiaries, agents, representatives, or intermediaries, such substantial business including but not limited to: (i) at least a portion of the infringements alleged herein; (ii) purposefully and voluntarily placing one or more infringing products into the stream of commerce with the expectation that they will be purchased by consumers in this forum; or (iii) regularly doing or soliciting business, engaging in other persistent courses of conduct, or deriving substantial revenue from goods and services provided to individuals in Kentucky and in this judicial district.

11.     Venue is therefore proper in the Eastern District of Kentucky pursuant to 28 U.S.C. § 1400(b).

## FLEXIWORLD AND THE PATENTS-IN-SUIT

12.     Flexiworld is a pioneer and leading innovator in the field of pervasive wireless technologies.

13.     Flexiworld was founded by American scientist and inventor William Ho Chang and is an innovator engaged in research and development of technologies for wireless applications and embedded solutions in short-range wireless (e.g., WiFi, Bluetooth) and mobile device markets.

14.     Flexiworld has significantly contributed to the innovation of wireless devices such as mobile phones, notebooks, PDAs, digital cameras, wireless television, wireless printers, wireless audio devices, etc.

15.     Flexiworld was voted the best early-stage company in the Pacific Northwest in 2002 and Flexiworld's business plan was also voted, consecutively, as the top 2 among the "Ten Best" in 2002 and in 2003 by the Business Journal in Silicon Valley, USA.

16.     Flexiworld's innovative work and results have been widely recognized in the industry.  The company's patents have been repeatedly forward cited by major technology companies worldwide.

17.     Flexiworld has developed wireless applications and embedded solutions for the short-range wireless and mobile device market.

18.     William H. Chang, one of the named co-inventors on the Patents-in-Suit, is the founder and President of Flexiworld.  Mr. Chang has been granted over 88 United States patents and over 100 patents worldwide on his inventions.

19. Christina Ying Liu, one of the named co-inventors on the Patents-in-suit, is a Flexiworld shareholder. Ms. Liu has been granted over 65 United States patents and over 75 patents worldwide on her inventions.

**The '233 Patent**

20. The '233 Patent, entitled "Digital content services or stores over the internet that transmit or stream protected or encrypted digital content to connected devices and applications that access the digital content services or stores," duly and legally issued on May 8, 2018, from U.S. Patent Application No. 09/992,413, filed on November 18, 2001, naming William Ho Chang and Christina Ying Liu as the inventors. A true and correct copy of the '233 Patent is attached hereto as **Exhibit 1** and is incorporated by reference.

21. The '233 Patent claims patent-eligible subject matter under 35 U.S.C. § 101.

22. Flexiworld is the owner and assignee of all rights, title, and interest in and under the '233 Patent.

23. An assignment of the '233 Patent from inventors Chang and Liu to Flexiworld is recorded at the United States Patent and Trademark Office ("PTO") at Reel/Frame 012325/0362.

24. Flexiworld has standing to sue for infringement of the '233 Patent.

**The '576 Patent**

25. The '576 Patent, entitled "Mobile information apparatus that includes wireless communication circuitry for discovery of an output device for outputting digital content at the wirelessly discovered output device," duly and legally issued on May 5, 2020, from U.S. Patent Application No. 16/229,896, filed on December 21, 2018, naming William Ho Chang and Christina Ying Liu as the inventors. A true and correct copy of the '576 Patent is attached hereto as **Exhibit 2** and is incorporated by reference.

26. The '576 Patent claims patent-eligible subject matter under 35 U.S.C. § 101.

27. Flexiworld is the owner and assignee of all rights, title, and interest in and under the '576 Patent.

28. An assignment of the '576 Patent from inventors Chang and Liu to Flexiworld is at the PTO at Reel/Frame 029983/0989.

29. Flexiworld has standing to sue for infringement of the '576 Patent.

**The '031 Patent**

30. The '031 Patent, entitled "Software application for a mobile device to wirelessly manage or wirelessly setup an output system or output device for service," duly and legally issued on November 24, 2020, from U.S. Patent Application No. 15/594,440, filed on May 12, 2017, naming William Ho Chang and Christina Ying Liu as the inventors. A true and correct copy of the '031 Patent is attached hereto as **Exhibit 3** and is incorporated by reference.

31. The '031 Patent claims patent-eligible subject matter under 35 U.S.C. § 101.

32. Flexiworld is the owner and assignee of all rights, title, and interest in and under the '031 Patent.

33. An assignment of the '031 Patent from inventors Chang and Liu to Flexiworld is recorded at the United States Patent and Trademark Office ("PTO") at Reel/Frame 042385/0202.

34. Flexiworld has standing to sue for infringement of the '031 Patent.

**The '725 Patent**

35. The '725 Patent, entitled "Output service over a network," duly and legally issued on September 20, 2011, from U.S. Patent Application No. 12/684,869, filed on January 8, 2010, naming William Ho Chang and Christina Ying Liu as the inventors. The '725 Patent is a reissue of U.S. Patent No. 7,318,086, which issued on January 8, 2008 from U.S. Patent Application No.

09/992,420, filed on November 18, 2001.  A true and correct copy of the '725 Patent is attached hereto as **Exhibit 4** and is incorporated by reference.

36. The '725 Patent claims patent-eligible subject matter under 35 U.S.C. § 101.

37. Flexiworld is the owner and assignee of all rights, title, and interest in and under the '725 Patent.

38. An assignment of the '725 Patent from inventors Chang and Liu to Flexiworld is recorded at the United States Patent and Trademark Office ("PTO") at Reel/Frame 012325/0368.

39. Flexiworld has standing to sue for infringement of the '725 Patent.

## GENERAL ALLEGATIONS

40. Lexmark has not obtained a license to any of the Patents-in-Suit.

41. Lexmark did not have Flexiworld's permission to make, use, sell, offer to sell, or import products or practice methods that are covered by one or more claims of any of the Patents-in-Suit.

42. Lexmark has made, used, sold, offered to sell, and/or imported into the United States products as claimed in each of the Patents-in-Suit.

43. Lexmark has infringed (literally and/or under the doctrine of equivalents), directly, indirectly, and/or through subsidiaries, agents, representatives, or intermediaries, one or more claims of each of the Patents-in-Suit by making, using, importing, testing, supplying, causing to be supplied, selling, and/or offering for sale in the United States wireless printers that infringe at least one claim of one or more of the Patents-in-Suit, including but not limited to Lexmark's Go Line series of wireless printers and those identified in **Exhibits 5 and 8** hereto (**"the Accused Wireless Printers"**).

44. Lexmark has infringed (literally and/or under the doctrine of equivalents), directly, indirectly, and/or through subsidiaries, agents, representatives, or intermediaries, one or more of the Patents-in-Suit by making, using, selling, offering to sell, testing, supplying, causing to be supplied, and/or importing into the United States Lexmark's mobile print apps, including Lexmark's Mobile Print App, Mobile Assistant App, Lexmark Cloud Connector, and those identified in **Exhibits 5 and 7** attached hereto (**"the Accused Lexmark Apps"**).

45. Lexmark has infringed (literally and/or under the doctrine of equivalents), directly, indirectly, and/or through subsidiaries, agents, representatives, or intermediaries, one or more claims of each of the Patents-in-Suit by making, using, importing, testing, supplying, causing to be supplied, selling, and/or offering for sale in the United States the Accused Wireless Printers and/or the Accused Lexmark Apps (collectively **"the Accused Products"**).

46. Lexmark's customers have directly infringed the Patents-in-Suit by using the Accused Products. Through its product manuals, website, and/or sales and marketing activities, Lexmark solicited, instructed, encouraged, and aided and abetted its customers to purchase and use the Accused Products in an infringing way.

47. Lexmark has been aware of Flexiworld since April 2002. For example, in an article about Flexiworld titled "Vancouver startup looks to revolutionize use of printers," Lexmark's manager of third-party alliances noted that "Flexiworld's concept is ahead of its time." *See* **Exhibit 9**, Rogoway, Mike, *Vancouver startup looks to revolutionize the use of printers*, The Columbian (Apr. 18, 2002).

48. Lexmark saw promise in what Flexiworld was developing. Specifically, Lexmark's manager of third-party alliances was quoted as saying about Flexiworld: "They are doing things

to help mobile devices be able to print things, and that is certainly something that has been lacking in the past. That's certainly an area that has a lot of room for invention there." *Id*.

49. On information and belief, Lexmark has had knowledge of the Patents-in-Suit since the time that they issued.

50. Alternatively, Lexmark has had knowledge of the Patents-in-Suit at least since receipt of Flexiworld's July 23, 2021 notice letter, which identified the Patents-in-Suit and the Accused Products as infringing the Patents-in-Suit ("the July 23, 2021 Notice Letter").

51. By receiving such notice of infringement, Lexmark obtained a subjective belief that there is a high probability that the Accused Products infringe the Patents-in-Suit. Despite being put on notice of infringement, on information and belief Lexmark has not taken any actions to avoid the conduct alleged to infringe, has not responded to Flexiworld's notice letter to offer any assertion as to why the Accused Products do not infringe the Patents-in-Suit, and has not sought to remedy its infringements by offering to take a license. Lexmark's failure to act reflects deliberate actions to avoid learning that the Accused Products infringe the Patents-in-Suit and, more generally, a policy of not earnestly reviewing and respecting the intellectual property of others.

52. Lexmark's actions after learning of the Patents-in-Suit were with specific intent to cause infringement of one or more claims of each of the Patents-in-Suit.

53. Further discovery may reveal earlier knowledge of one or more of the Patents-in-Suit, which would provide additional evidence of Lexmark's specific intent, willful blindness, and/or willful infringement of the Patents-in-Suit.

54. Despite having knowledge of the Patents-in-Suit, as well as knowledge that it was directly and/or indirectly infringing one or more claims of each Patent-in-Suit, Lexmark

nevertheless proceeded to infringe the Patents-in-Suit, and induce others to do the same, with full and complete knowledge of the applicability of the Patents-in-Suit to the Accused Products, without a license and without a good faith belief that the claims of the Patents-in-Suit were not infringed. As noted above, this includes, but is not limited to, the willful blindness of Lexmark including its refusal to investigate whether the Accused Products infringe the Patents-in-Suit.

55. Flexiworld has been damaged as a result of Lexmark's infringing conduct. Lexmark is therefore liable to Flexiworld in an amount that adequately compensates Flexiworld for Lexmark's infringement, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

56. In addition, for the reasons discussed herein, Lexmark's infringing activities detailed in this Complaint and **Exhibits 5-8** have been willful, egregious, wanton, and deliberate in disregard to Flexiworld's rights, justifying a finding of willful infringement, enhanced damages under 35 U.S.C. § 284 and attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

57. Lexmark markets and sells other products that are not covered by the claims of the Patents-in-Suit but that were sold with or in conjunction with the Accused Products (e.g., printer ink). Accordingly, Flexiworld is entitled to collect damages from Lexmark for convoyed sales of certain non-patented items.

58. Lexmark failed to obtain permission from Flexiworld to make, use, sell, offer to sell, or import products incorporating the inventions claimed in the Patents-in-Suit including, but not limited to, the Accused Products.

59. Attached hereto are **Exhibits 5-8,** and incorporated herein by reference, are representative claim charts detailing how exemplar Accused Products have infringed the Patents-in-Suit.

60. For each count of infringement listed below, Flexiworld incorporates and re-states the allegations contained in the preceding paragraphs above, including these General Allegations, as if fully set forth in each count of infringement.

## COUNT I – INFRINGEMENT OF THE '233 PATENT

61. Flexiworld incorporates herein the allegations made in paragraphs 1 through 60.

62. Lexmark has and continues to directly infringe one or more claims of the '233 Patent, including, for example, claim 1, in violation of 35 U.S.C. § 271(a) by making, using, selling, offering for sale, and/or importing into the United States infringing products including, but not limited to, the Accused Products.

63. An exemplary claim chart demonstrating Lexmark's infringement of the '233 Patent, as well as Lexmark's customers' infringement of the '233 Patent, which is induced and contributed to by Lexmark, is attached as **Exhibit 5** and incorporated herein by reference.

64. Additionally, on information and belief, Lexmark has and continues to indirectly infringe the '233 Patent in violation of 35 U.S.C. § 271(b) at least by inducing customers to purchase the Accused Products and/or by instructing customers how to use the Accused Products in a way that directly infringes at least claim 1 of the '233 Patent.

65. Lexmark has had actual knowledge of the '233 Patent since issuance of the '233 Patent. Alternatively, Lexmark has had actual knowledge of the '233 Patent since receipt of the July 23, 2021 Notice Letter.

66. Despite Lexmark's knowledge of the '233 Patent and of its infringement of the '233 Patent, Lexmark has not sought to remedy its infringement or sought to identify any good faith belief as to why it does not infringe the '233 Patent.

67. On information and belief, Lexmark's actions represent a specific intent to induce infringement of at least claim 1 of the '233 Patent. For example, Lexmark offers its customers extensive customer support and instructions that instruct and encourage its customers to infringe the '233 Patent via at least their use of the Accused Products. *See, e.g.,* https://support.lexmark.com/en_us.html; *see also* **Exhibit 5** and materials cited therein.

68. Additionally, on information and belief, Lexmark has and continues to indirectly infringe the '233 Patent in violation of 35 U.S.C. § 271(c) by contributing to the direct infringement of Lexmark's customers. Since at least when it learned of the '233 Patent, Lexmark has known, or should have known, that the intended use of its Accused Products by an end user is both patented and infringing.

69. The Accused Products are not staple articles or commodities of commerce suitable for substantial noninfringing use. Rather, the Accused Products are especially made and/or adapted for use in infringing the '233 Patent. Further, the Accused Products are a material part of the inventions claimed in the '233 Patent. *See* **Exhibit 5** and materials cited therein.

70. As a result of Lexmark's infringement of the '233 Patent, Flexiworld has suffered and is owed monetary damages adequate to compensate it for the infringement under 35 U.S.C. § 284, but in no event less than a reasonable royalty.

71. In addition, Lexmark's infringing activities detailed in this Complaint and **Exhibit 5** have been willful, egregious, wanton, and deliberate in disregard to Flexiworld's rights,

justifying a finding of willful infringement, enhanced damages under 35 U.S.C. § 284 and attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## COUNT II – INFRINGEMENT OF THE '576 PATENT

72. Flexiworld incorporates herein the allegations made in paragraphs 1 through 60.

73. Lexmark has directly infringed one or more claims of the '576 Patent, including, for example, claim 15, in violation of 35 U.S.C. § 271(a) by making, using, selling, offering for sale, and/or importing into the United States infringing products including, but not limited to, the Accused Lexmark Apps.

74. An exemplary claim chart demonstrating Lexmark's infringement of the '576 Patent, as well as Lexmark's customers' infringement of the '576 Patent, which is induced and contributed to by Lexmark, is attached as **Exhibit 6** and incorporated herein by reference.

75. Additionally, on information and belief, Lexmark has indirectly infringed the '576 Patent in violation of 35 U.S.C. § 271(b) at least by inducing customers to purchase and/or download the Accused Lexmark Apps and/or by instructing customers how to use the Accused Lexmark Apps in a way that directly infringes at least claim 15 of the '576 Patent.

76. Lexmark has had actual knowledge of the '576 Patent since issuance of the '576 Patent. Alternatively, Lexmark has had actual knowledge of the '576 Patent since receipt of the July 23, 2021 Notice Letter.

77. Despite Lexmark's knowledge of the '576 Patent and of its infringement of the '576 Patent, Lexmark has not sought to remedy its infringement or sought to identify any good faith belief as to why it does not infringe the '576 Patent.

78. On information and belief, Lexmark's actions represent a specific intent to induce infringement of at least claim 15 of the '576 Patent. For example, Lexmark offers its customers

extensive customer support and instructions that instruct and encourage its customers to infringe the '576 Patent via at least their use of the Accused Lexmark Apps. *See, e.g.,* https://support.lexmark.com/en_us.html; *see also* **Exhibit 6** and materials cited therein.

79. Additionally, on information and belief, Lexmark is indirectly infringing the '576 Patent in violation of 35 U.S.C. § 271(c) by contributing to the direct infringement of Lexmark's customers, including at least claim 15 of the '576 Patent. Since at least when it learned of the '576 Patent, Lexmark has known, or should have known, that the intended use of its Accused Lexmark Apps by an end user is both patented and infringing.

80. The Accused Lexmark Apps are not staple articles or commodities of commerce suitable for substantial noninfringing use. Rather, the Accused Lexmark Apps are especially made and/or adapted for use in infringing the '576 Patent. Further, the Accused Lexmark Apps are a material part of the inventions claimed in the '576 Patent. *See* **Exhibit 6** and materials cited therein.

81. As a result of Lexmark's infringement of the '576 Patent, Flexiworld has suffered and is owed monetary damages adequate to compensate it for the infringement under 35 U.S.C. § 284, but in no event less than a reasonable royalty.

82. In addition, Lexmark's infringing activities detailed in this Complaint and **Exhibit 6** have been willful, egregious, wanton, and deliberate in disregard to Flexiworld's rights, justifying a finding of willful infringement, enhanced damages under 35 U.S.C. § 284 and attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

### COUNT III – INFRINGEMENT OF THE '031 PATENT

83. Flexiworld incorporates herein the allegations made in paragraphs 1 through 60.

84. Lexmark has and continues to directly infringe one or more claims of the '031 Patent, including, for example, claim 14, in violation of 35 U.S.C. § 271(a) by making, using, selling, offering for sale, and/or importing into the United States infringing products including, but not limited to, the Accused Lexmark Apps, including non-transitory computer readable mediums with the Accused Lexmark Apps.

85. An exemplary claim chart demonstrating Lexmark's infringement of the '031 Patent, as well as Lexmark's customers' infringement of the '031 Patent, which is induced and contributed to by Lexmark, is attached as **Exhibit 7** and incorporated herein by reference.

86. Additionally, on information and belief, Lexmark has and continues to indirectly infringe the '031 Patent in violation of 35 U.S.C. § 271(b) at least by inducing customers to purchase and/or download the Accused Lexmark Apps and/or by instructing customers how to use the Accused Lexmark Apps in a way that directly infringes at least claim 14 of the '031 Patent.

87. Lexmark has had actual knowledge of the '031 Patent since issuance of the '031 Patent. Alternatively, Lexmark has had actual knowledge of the '031 Patent since receipt of the July 23, 2021 Notice Letter.

88. Despite Lexmark's knowledge of the '031 Patent and of its infringement of the '031 Patent, Lexmark has not sought to remedy its infringement or sought to identify any good faith belief as to why it does not infringe the '031 Patent.

89. On information and belief, Lexmark's actions represented a specific intent to induce infringement of at least claim 14 of the '031 Patent. For example, Lexmark offered its customers extensive customer support and instructions that instructed and encouraged its customers to infringe the '031 Patent via at least their use of the Accused Lexmark Apps. *See, e.g.,* https://support.lexmark.com/en_us.html; *see also* **Exhibit 7** and materials cited therein.

90. Additionally, on information and belief, Lexmark has and continues to indirectly infringe the '031 Patent in violation of 35 U.S.C. § 271(c) by contributing to the direct infringement of Lexmark's customers. Since at least when it learned of the '031 Patent, Lexmark has known, or should have known, that the intended use of its Accused Lexmark Apps by an end user is both patented and infringing.

91. The Accused Lexmark Apps are not staple articles or commodities of commerce suitable for substantial non infringing use. Rather, the Accused Lexmark Apps are especially made and/or adapted for use in infringing the '031 Patent. Further, the Accused Lexmark Apps are a material part of the inventions claimed in claim 14 of the '031 Patent. *See* **Exhibit 7** and materials cited therein.

92. As a result of Lexmark's infringement of the '031 Patent, Flexiworld has suffered and is owed monetary damages adequate to compensate it for the infringement under 35 U.S.C. § 284, but in no event less than a reasonable royalty.

93. In addition, Lexmark's infringing activities detailed in this Complaint and **Exhibit 7** have been and continue to be willful, egregious, wanton, and deliberate in disregard to Flexiworld's rights, justifying a finding of willful infringement, enhanced damages under 35 U.S.C. § 284 and attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## COUNT IV – INFRINGEMENT OF THE '725 PATENT

94. Flexiworld incorporates herein the allegations made in paragraphs 1 through 60.

95. Lexmark has and continues to directly infringe one or more claims of the '725 Patent, including, for example, claim 44, in violation of 35 U.S.C. § 271(a) by making, using, selling, offering for sale, and/or importing into the United States infringing products including, but not limited to, the Accused Products.

96. An exemplary claim chart demonstrating Lexmark's infringement of the '725 Patent, as well as Lexmark's customers' infringement of the '725 Patent, which is induced by Lexmark, is attached as **Exhibit 8** and incorporated herein by reference.

97. Additionally, on information and belief, Lexmark has and continues to indirectly infringe the '725 Patent in violation of 35 U.S.C. § 271(b) at least by inducing customers to purchase the Accused Products and/or by instructing customers how to use the Accused Products in a way that directly infringes at least claim 44 of the '725 Patent.

98. Lexmark has had actual knowledge of the '725 Patent since issuance of the '725 Patent. Alternatively, Lexmark has had actual knowledge of the '725 Patent since receipt of the July 23, 2021 Notice Letter.

99. Despite Lexmark's knowledge of the '725 Patent and of its infringement of the '725 Patent, Lexmark has not sought to remedy its infringement or sought to identify any good faith belief as to why it does not infringe the '725 Patent.

100. On information and belief, Lexmark's actions represented a specific intent to induce infringement of at least claim 44 of the '725 Patent. For example, Lexmark offered its customers extensive customer support and instructions that instructed and encouraged its customers to infringe the '725 Patent via at least their use of the Accused Products. *See, e.g.,* https://support.lexmark.com/en_us.html; *see also* **Exhibit 8** and materials cited therein.

101. Additionally, on information and belief, Lexmark has and continues to indirectly infringe the '725 Patent in violation of 35 U.S.C. § 271(c) by contributing to the direct infringement of Lexmark's customers, including at least claim 44 of the '725 Patent. Since at least when it learned of the '725 Patent, Lexmark has known, or should have known, that the intended use of its Accused Products by an end user is both patented and infringing.

102. The Accused Products are not staple articles or commodities of commerce suitable for substantial noninfringing use. Rather, the Accused Products are especially made and/or adapted for use in infringing the '725 Patent. Further, the Accused Products are a material part of the inventions claimed in the '725 Patent. *See* **Exhibit 8** and materials cited therein.

103. As a result of Lexmark's infringement of the '725 Patent, Flexiworld has suffered and is owed monetary damages adequate to compensate it for the infringement under 35 U.S.C. § 284, but in no event less than a reasonable royalty.

104. In addition, Lexmark's infringing activities detailed in this Complaint and **Exhibit 8** have been willful, egregious, wanton, and deliberate in disregard to Flexiworld's rights, justifying a finding of willful infringement, enhanced damages under 35 U.S.C. § 284 and attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## DEMAND FOR A JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Flexiworld demands a trial by jury on all issues triable of right by a jury.

## PRAYER FOR RELIEF

WHEREFORE, Flexiworld respectfully requests that this Court enter judgment in its favor and grant the following relief:

a. A judgment that Lexmark has directly and/or indirectly infringed one or more claims of each of the Patents-in-Suit;

b. A judgment and order requiring Lexmark to pay Flexiworld past and future damages under 35 U.S.C. § 284, including for supplemental damages arising from any continuing post-verdict infringement for the time between trial and entry of the final judgment with an accounting, as needed, as provided by 35 U.S.C. § 284;

    c. A judgment and order that Lexmark has willfully infringed the Patents-in-Suit and requiring Lexmark to pay Flexiworld enhanced damages under 35 U.S.C. § 284 and attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285;

    d. A judgment and order requiring Lexmark to pay Flexiworld pre-judgment and post-judgment interest on the damages award;

    e. A judgment and order requiring Lexmark to pay Flexiworld's costs; and

    f. Such other and further relief as the Court may deem just and proper.

Dated: April 29, 2022

Respectfully submitted,

  /s/ Jim Francis
**JAMES M. FRANCIS**
KENTUCKY BAR NO. 89834
**FRANCIS LAW FIRM PLLC**
4071 Tates Creek Centre Drive, Suite 304
Lexington, Kentucky 40517
P. 859-286-4500
jim@francis-law.com

**TIMOTHY E. GROCHOCINSKI**
(*pro hac vice application to be filed*)
ILLINOIS BAR NO. 6295055
**CHARLES AUSTIN GINNINGS**
(*pro hac vice application to be filed*)
NEW YORK BAR NO. 4986691
**NELSON BUMGARDNER CONROY PC**
15020 S. Ravinia Avenue, Suite 29
Orland Park, Illinois 60462
P. 708.675.1974
tim@nelbum.com
austin@nelbum.com

*COUNSEL FOR PLAINTIFF*
*FLEXIWORLD TECHNOLOGIES, INC.*